### OSBORNE STEAM-ENGINEERING CO. v. LAMB et al.

(Circuit Court, N. D. Illinois.   August 10, 1893.)

**PATENTS FOR INVENTIONS—INFRINGEMENT—STEAM-HEATING PIPES.**

Letters patent No. 269,224, issued December 19, 1882, to Eugene F. Osborne, for improvement in steam piping for heating, consisting in a change in the place where the steam supply pipe is connected with the seal tank, is not infringed by a system of steam heating consisting of the old single-pipe system, without any seal tank, even though the incidental depression of a pipe under a doorway should cause it to be occasionally filled with water, since that would not constitute a water seal between radiators, within the meaning of the patent.

Suit by the Osborne Steam-Engineering Company against F. W. Lamb, Albert C. Lamb, William A. Green, and William M. Crilly, to restrain the alleged infringement of a patent.

Samuel E. Hibben and Banning, Banning & Payson, for complainant.

Coborn & Thacher, for defendants.

JENKINS, Circuit Judge.   The bill is filed to restrain an alleged infringement of patent No. 269,224, issued December 19, 1882, to Eugene F. Osborne, for "steam piping for buildings." The defenses are the invalidity of the patent, and noninfringement. The first claim of the patent is alone involved.   A prior patent, No. 212,320, was issued to Mr. Osborne, February 18, 1879, for "improvement in steam piping for heating, cooking," etc.   The patent in suit is stated to be an improvement upon the system covered by the first patent. In the first patent, according to the drawings, the seal tank is connected with the steam supply main, or with the boiler, at a point back of any connections leading to a radiator.   It was found, in practice, that when the pipes forming the supply and return mains of the equalized circuit were laterally extended to a great distance, and the supply was vertically but little higher than the return main, the water from the latter was liable to rise into the former, and shut off the radiator feed.   This difficulty was sought to be obviated by conducting the steam supply pipe first to the radiators, and then to the equalizing tank, whereby the pressure in the tank is less than that in the supply main.   The principal—and, I believe, the only—difference in the two patents is that in the first the steam supply pipe is connected with the seal tank before the steam to supply the radiators is taken from that pipe; in the second patent, it is connected after the supply to the radiators.   In the first patent the specifications and claims—whatever the drawings may show—do not limit the connection between the steam supply and the tank at a point before the connection with the radiators.   The inventor sought to obtain, and claimed by his first patent to have obtained, a substantially equable pressure throughout the entire division between the supply and the return pipes.   It may be questioned whether the change of location of parts of the apparatus has done more than to vary the degree in the results produced, and whether the first patent would not cover the particular location of the parts designated in the second patent.   Without stopping to consider this question, or the

question of estoppel arising upon the license to the defendants, I am of the opinion that the bill must be dismissed upon the ground that the defendants have not infringed. In the defendants' apparatus, complained of, there is no condensed water return main, and can be no water sealing in any return main, which forms part of the combination of the Osborne system. The steam-heating system placed by the defendants was the old single-pipe system, known long before the Osborne patents. The incidental depression of a pipe under a doorway, which would cause it to be occasionally filled with water, would not, in my judgment, constitute a water seal between radiators, within the contemplation of the Osborne patent. Upon the ground of noninfringement, therefore, the bill must be dismissed.